[No. D010776. Fourth Dist., Div. One. Nov. 1., 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES SMITH, JR., Defendant and Appellant.

COUNSEL

Stephen J. Perrello, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, and Holly D. Wilkens, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

NARES, J.—After revocation of outpatient status and return to Patton State Hospital (Patton), appellant James Smith, Jr. (Smith), claims he should instead have been given a sanity trial under mandatory provisions of

Penal Code section 1026.2, subdivision (e) (hereafter section 1026.2 (e)).[1] We hold the provisions of section 1026.2(e) are directory, not mandatory, and affirm the revocation order.

## FACTS

Smith was sent to Patton in 1984 pursuant to section 1026, after a verdict finding him not guilty of murder by reason of insanity. In 1986 he applied for outpatient status under section 1026.2, and he was released to an outpatient program in September 1987.

In December 1988, some 15 months after Smith's release on outpatient status, he was moved back to Patton pursuant to the summary return powers granted Patton's director by section 1610. A revocation hearing scheduled for January 1989 was continued to July with Smith waiving time.

Following a hearing on July 14, 1989, Smith's outpatient status was revoked pursuant to section 1609 and he was remanded to Patton for treatment. No request for a jury trial on the question of restoration of sanity was made to the superior court. Timely notice of appeal was filed.

## QUESTION PRESENTED

 Smith raises a question of first impression: because he was an outpatient for 15 months, and section 1026.2(e) requires a trial on the issue of restoration of sanity after 1 year, had the trial court lost power to take any action with respect to him *except* affording him this statutorily required trial? In other words, was the section 1609 revocation void, so that we should now order he be given instead a 1026.2(e) restoration of sanity trial? We must also resolve the question of the effect of (a) Smith's waiver of time after the initiation of revocation proceedings, and (b) Smith's failure to request below the relief that he now seeks from this court.

The crux of this appeal is whether the provisions of section 1026.2(e) are mandatory or directory; that is, does a failure to comply with time limits therein set out invalidate acts subsequently taken by the court, or are such subsequent acts presumptively valid notwithstanding such a failure of compliance? Resolution of these questions, of course, will influence the resolution of the subsidiary questions of Smith's waiver of time and his failure to request this relief below.

Smith argues that failure to afford him the jury trial described in 1026.2(e) *at the time directed* was jurisdictional, in the sense that such

---

[1] All statutory references are to the Penal Code unless otherwise specified.

failure means the court could not later properly have revoked his outpatient status, as it did, but was instead bound to offer him a jury trial on the restoration of sanity question. In support of this effort, he distinguishes cases reaching an apparently contrary conclusion with respect to related, but not identical, code sections. Before addressing these matters we must, however, examine the often complex history of the insanity statutes which are here at issue.

## LEGISLATIVE HISTORY

The defense of insanity has always involved complexity in criminal proceedings. Before 1927 an acquittal because of insanity resulted in another trial on present sanity, following which "[i]f the jury find the defendant insane, he shall be committed by the Sheriff to the State Insane Asylum. If the jury find the defendant sane, he shall be discharged." (Amends. to the Codes 1873-1874, ch. 614, § 68, p. 447.) No procedure was specified for the later discharge of a person found presently insane, should he somehow regain his sanity while in the "State Insane Asylum."

In 1927 there was a major revision of statutes dealing with insanity as a defense, including for the first time a plea of not guilty by reason of insanity, specifying the manner of trial upon such plea, describing the placement and treatment of persons acquitted by such plea, and providing for the possibility they might be later restored to sanity.

Section 1026.2 derived from former section 1026a, enacted by Statutes 1927, chapter 676, section 1, page 1148 and renumbered by Statutes 1979, chapter 1114, section 2, page 4051. At the time of renumbering, section 1026.2 had been modified only slightly in half a century, and provided in relevant part as follows:

"An application for the release of a person who has been committed to a state hospital . . . as provided in Section 1026, upon the ground that his sanity has been restored, may be made to the superior court of the county from which he was committed, either by such person or by the superintendent of the state hospital . . . . No hearing upon such application shall be allowed until the person committed shall have been confined or placed on outpatient treatment for a period of not less than 90 days . . . If the finding of the court be adverse to releasing such person upon his application for release, on the ground that his sanity has not been restored, he shall not be permitted to file a further application until one year has elapsed . . . . In any hearing authorized by this section the burden of proving that his sanity has been restored shall be upon the applicant." (Stats. 1979, ch. 1114, § 2, p. 4051.)

The procedure set out is simple: confinement for a defined minimum period before application for a hearing on release, which, if denied, may be renewed annually. Although the word "hearing" is used, it has been clear since 1972 that such an applicant was in fact entitled to a jury trial on the question of restoration of sanity. (*In re Franklin* (1972) 7 Cal.3d 126, 148-149 [101 Cal.Rptr. 553, 496 P.2d 465].) Codification of the rule requiring jury trials in these cases did not occur, however, until the Legislature in 1984 enacted two amended versions of 1026.2, taking effect at differing times, only one of which mentioned a trial.

Since 1984 two distinct versions of section 1026.2 have coexisted. Statutes 1984, chapter 1416, page 4982, effective until 1986 (and possibly again in 1994), continues in the general tenor of its predecessors. The other, Statutes 1984, chapter 1488, section 3.5, page 5201, in effect since 1986, is a far more detailed set of procedures governing restoration of sanity matters, involving a two-step rather than a unitary proceeding. Instead of one hearing (jury trial) on the restoration question, there is first a hearing (nonjury) on whether an applicant is dangerous to himself or others. If he is found not dangerous, and *also* completes a community program *or* outpatient status for one year, then "[t]he court at the end of the one year, shall have a trial to determine if sanity has been restored." (Current § 1026.2(e).) It is this provision, of course, which is the basis of Smith's present claim. No comparable language mandating time of trial is contained in the less complex version of section 1026.2 once (and possibly in the future again) in effect.

The more complex statute, originally characterized as a temporary measure, was scheduled to be in effect for a period of three years, following which it was to be automatically repealed and replaced by the less complex version of section 1026.2 enacted by Statutes 1984, chapter 1416, page 4982, as specified by subdivision (m) of Statutes 1984, chapter 1488, section 3.5, page 5204. However, Statutes 1987, chapter 1343, section 1, No. 11 West California Legislative Service, page 703, No. 5 Deering's Advance Legislative Service, page 4990, extended the life of the long-form section 1026.2, which is currently scheduled to remain in effect until it is replaced by the short-form section 1026.2 on January 1, 1994.

Thus, in 1994 the current two-step procedure will be replaced by the unitary hearing process of short-form section 1026.2, unless (as is quite possible) intervening amendments extend the long-form statute. Despite an apparent legislative intent that the language here at issue is to be repealed at some future time, its original three-year life has now been extended to at least eight years, and we therefore must decide whether it is to be construed as mandatory or directory.

## ANALYSIS

 "[I]n evaluating whether a provision is to be accorded mandatory or directory effect, courts look to the purpose of the procedural requirement to determine whether invalidation is necessary to promote the statutory design." (*People* v. *McGee* (1977) 19 Cal.3d 948, 958 [140 Cal.Rptr. 657, 568 P.2d 382].) Statutory design is one way to describe what is more often called legislative intent, the touchstone of directory/mandatory analysis. (*Morris* v. *County of Marin* (1977) 18 Cal.3d 901, 909-910 [136 Cal.Rptr. 251, 559 P.2d 606].)

 Although this is a question of first impression, we are guided by the decisions of other courts of appeal on related statutory provisions: *People* v. *Harner* (1989) 213 Cal.App.3d 1400 [262 Cal.Rptr. 422], construing the provisions of section 1606 (mandating annual review of outpatient status for a mentally disordered sex offender (MDSO)), and *People* v. *Mord* (1988) 197 Cal.App.3d 1090 [243 Cal.Rptr. 403], construing the provisions of former section 1611 (requirements for annual status hearings for mental hospital parolees). The reasoning in each opinion is instructive.

*Mord* is of particular interest because section 1611 was repealed by Statutes 1984, chapter 1488, section 11, page 5210 while section 12, page 5210 stated: "It is the intent of the Legislature that the court shall determine whether a person on parole, pursuant to former Section 1611 of the Penal Code, shall be returned to inpatient status or placed on outpatient status. It is further intended that any such person may make application for restoration of sanity as provided for in Section 1026.2 of the Penal Code." This is the statute whose construction is now at issue, and the *Mord* analysis of its predecessor is necessarily of great weight.

In that case (also involving an appellant found not guilty by reason of insanity following a homicide), the annual hearing required by former section 1611, subdivision (a) was not held for three years, near the end of which period Mord was recommitted. Although recognizing that the "statutory procedures to which appellant was entitled were violated" (*People* v. *Mord, supra*, 197 Cal.App.3d at p. 1111), the court determined the statute in question was directory, rather than mandatory, and thus no relief was due appellant. The court's rationale, that the primary legislative purpose was "to protect the public as efforts are made to treat insane persons" (*id.* at p. 1114), is equally applicable to appellant Smith's case.

In this case, finding the statute directory will mean the court's order for treatment will be given effect. A contrary holding, that failure to follow a mandatory statutory procedure requires a trial rather than recommitment,

not only disserves the clear legislative purpose, but also disserves those like Smith, who may require treatment.

*People* v. *Harner, supra*, 213 Cal.App.3d 1400, involved another failure to hold mandated annual hearings, in that case for a period of six years. While Harner claimed such failure required his discharge from outpatient status (*id.* at p. 1405), and Smith restricts his claim to entitlement to trial on the sanity question, this distinction in the relief sought does not compel a different analysis. The court there found "the annual review provisions of section 1606 are directory since the primary purpose of the statutory scheme is protection of society." (*Id.* at p. 1406.)

## DISCUSSION

We see no reason to interpret section 1026.2(e) in a differing fashion. ▮ Our Supreme Court has pointed out that: "[G]enerally, requirements relating to the time within which an act must be done are directory rather than mandatory or jurisdictional, unless a contrary intent is clearly expressed. [Citations.] . . . In some cases focus has been directed at the likely consequences of holding a particular time limitation mandatory, in an attempt to ascertain whether those consequences would defeat or promote the purpose of the enactment. [Citations.]" (*Edwards* v. *Steele* (1979) 25 Cal.3d 406, 410 [158 Cal.Rptr. 662, 599 P.2d 1365].)

▮ Prohibiting hospitalization of Smith after the necessity for such was demonstrated in a hearing at which Smith was represented by counsel would indeed tend to defeat, rather than promote, the purposes sought to be served by the statute. We hold, therefore, that the provisions of section 1026.2(e) requiring a trial on the issue of restoration of sanity after one year, are directory, not mandatory.

This interpretation of the statute not only conforms with the interpretations given related provisions, as discussed *ante*, but also harmonizes the operation of the statutes as they affected the actions of Smith and his counsel in the court below. If provision of a trial on the issue of restoration of sanity were mandatory, Smith's waiver of time for revocation proceedings might have been ineffective to waive a trial, and failure to request trial on the sanity question might then have raised further questions (e.g., as to counsel's competency).

If a jury trial on restoration after one year is directory, however, there may be excellent reasons for failing to request it, as there appear to have been in this case. After 180 days from the commitment, a person may have a hearing, receive outpatient status or community placement, and 1 year

later request the restoration of sanity trial. But if Smith had had a jury trial with a finding his sanity was not restored (as must have seemed both to Smith and his counsel a very real possibility), he would not have been able to *begin* this process for a period of one year. Thus, where there seems to be any real question as to prevailing in a restoration of sanity trial, a competent counsel and properly advised committed person may well have reason to forego any request for such a proceeding.

While concluding the time for trial requirement of section 1026.2(e) is directory, we emphasize this holding in no way diminishes the responsibility of trial courts to ensure, for the protection of both society and those committed, that trial proceedings on restoration of sanity be in fact conducted at the statutorily required time. "We are confident . . . this opinion will increase the awareness of such officials of their duties and lead to increased compliance with the statutory requirements." (*People* v. *Harner, supra*, 213 Cal.App.3d at p. 1410.)

## DISPOSITION

The judgment (revocation of outpatient status) is affirmed.

Todd, Acting P. J., and Benke, J., concurred.

A petition for a rehearing was denied December 18, 1990, and appellant's petition for review by the Supreme Court was denied January 17, 1991.