[No. E011279. Fourth Dist., Div. Two. Apr. 28, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM R. KIRKLAND, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II-A

894

**COUNSEL**

J. Peter Axelrod, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, M. Howard Wayne and David Delgado-Rucci, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**TIMLIN, J.**—This appeal raises significant issues concerning the article of the Penal Code entitled "Disposition of Mentally Disordered Prisoners upon

Discharge" (Pen. Code, §§ 2960-2981) (hereafter the Mentally Disordered Prisoners Act, or the Act), and in particular Penal Code sections 2970 and 2972.[1]

When defendant and appellant William R. Kirkland (defendant) had almost completed his maximum parole term and was due to be unconditionally released, he was recommitted for continued involuntary treatment of his mental disorder (continued treatment), pursuant to sections 2970 and 2972. Defendant contends that this recommitment was erroneous, in that:

1. The petition for continued treatment (petition) was filed under the number of a case in which defendant had been discharged, rather than under the number of the case in which he was in physical custody for a parole violation and therefore the trial court had no jurisdiction to recommit defendant; and the trial court's order purporting to correct the case number nunc pro tunc was erroneous;

2. Defendant received no treatment by state mental health officials for his mental disorder while he was in physical custody following his arrest for a parole violation on July 22, 1991, through entry of the order for continued treatment on June 4, 1992, and therefore the trial court had no jurisdiction to recommit him for "continued" treatment;

3. The recommitment order is void because the required remission evaluation report was submitted to the district attorney less than 180 days before defendant's parole termination date, in violation of section 2970; and

4. The recommitment order is void because the trial in the continued treatment proceeding commenced less than 30 days before defendant's parole termination date, in violation of section 2972, subdivision (a).

We find no error, and accordingly we affirm.

I

FACTUAL AND PROCEDURAL BACKGROUND

A. *Defendant's Mental Disorder.*

Defendant suffers from paranoid schizophrenia. Although rational at times, when he perceives someone as hostile he becomes delusional and threatening. He has made numerous threats to kill others, including the

---

[1]Further statutory citations are to the Penal Code unless otherwise specified.

Governor, members of the Parole Board, parole and corrections officers, mental health professionals, members of his own family, and the trial judge in this case. Because of his mental illness, defendant presents a substantial danger of physical harm to others. On occasion, defendant has taken antipsychotic medication either voluntarily or under court order. When defendant takes such medication, his condition is considerably improved.

### B. *Background of the Underlying Cases.*

On June 23, 1986, in People v. Kirkland (Super. Ct. San Bernardino County, No. SCR-44305) (hereafter Case No. 44305), defendant was charged by complaint with two counts of assault with a deadly weapon. On July 3, 1986, after a preliminary hearing, he was held to answer on both charges. While in custody pending trial in Case No. 44305, defendant used a razor to slash the throat of a corrections officer, Sheriff's Deputy Maclorio Rojo.

Accordingly, in a second case, People v. Kirkland (Super. Ct. San Bernardino County, No. SCR-44503) (hereafter Case No. 44503), defendant was charged by information on October 14, 1986, with the attempted murder of Deputy Rojo.[2] The prosecutor in Case No. 44503 was Deputy District Attorney Raymond L. Haight III (Haight).

In Case No. 44503, on December 16, 1986, a jury found defendant guilty of attempted voluntary manslaughter and on the next day the trial court found defendant not guilty by reason of insanity under section 1026. On April 5, 1987, defendant was committed to Patton State Hospital under section 1026.

Thereafter, on July 20, 1987, in Case No. 44305, pursuant to a plea bargain, defendant pleaded guilty to one count of assault with a deadly weapon and was sentenced to three years in prison. On that same date, in Case No. 44503, defendant withdrew his plea of not guilty by reason of insanity, and Case No. 44305 was "trail[ed] for outpatient proceedings." Counsel stipulated that the court might review "this" case for outpatient proceedings.

Thus, defendant entered prison in Case No. 44305 on September 17, 1987. On June 10, 1988, with Case No. 44503 still pending, he was paroled in Case No. 44305. One of the conditions of his parole was that he attend outpatient psychiatric counseling. By July 13, 1988, however, defendant had

---

[2] It seems that defendant also was charged and eventually sentenced in a third case. (People v. Kirkland (Super. Ct. San Bernardino County, No. SCR-44306).)

disappeared. On July 20, 1988, he was arrested for a new offense of possession of a controlled substance for sale.

Meanwhile, on August 12, 1988, the trial court ordered defendant "discharged" in Case No. 44503 because he was on outpatient status. It noted that defendant was currently in prison on another case.

On August 19, 1988, defendant was found to be in violation of his parole in Case No. 44305 and was returned to custody for 12 months. On March 21, 1989, he was paroled on the same conditions previously imposed when he was first paroled. On April 4, 1989, he was arrested for parole violations, including failure to attend psychiatric therapy. On April 17, 1989, he was returned to custody for six months and later, on September 28, 1989, he was returned to custody for twelve months.

In May 1990, prison officials obtained a court order permitting them to administer antipsychotic medication to defendant involuntarily. With such medication, defendant's mental condition improved.

Defendant next was paroled on condition that he be committed to Atascadero State Hospital (Atascadero) for treatment.[3] At Atascadero, defendant continued to receive antipsychotic medication involuntarily. The staff at Atascadero felt that defendant did not need to be hospitalized as long as he took antipsychotic medication. They therefore released defendant to an outpatient program on February 15, 1991. He remained on parole, however, and it remained a condition of his parole that he receive mental health treatment.

Attempts were made to set up a treatment program for defendant while he was in an outpatient program while on parole, but they were frustrated by the fact that he was swiftly and repeatedly rearrested for parole violations. First, he was arrested on February 20, 1991, just five days after his release. He was released again on March 21, 1991, but arrested a second time on April 16, 1991 for new parole violations and returned to custody on May 15, 1991. On July 15, 1991, he was released on parole a third time. Seven days later, on July 22, 1991, he was arrested for further parole violations. When he was returned to custody on August 21, 1991, he was sent to the California Men's Colony in San Luis Obispo (San Luis Obispo).

C. *Background of the Continued Treatment Proceeding.*

Upon defendant's arrival at San Luis Obispo, his paranoid schizophrenia was in remission. The staff at San Luis Obispo formulated a treatment plan

---

[3]Section 2962 requires that when a mentally disordered offender (as defined therein) is paroled, one condition of parole must be that the offender be treated for his mental disorder.

for him, but he would not follow it. He refused both therapy and antipsychotic medication.

In January, 1992, defendant's condition deteriorated. As a result, he was reexamined on January 17, 1992 and found to be having an acute episode of paranoid schizophrenia. He was "extremely agitated, hostile, angered and explosive"; he made "threats of bodily harm towards staff, quote, killing, death, mayhem, end quote."

Defendant was due to be released on June 9, 1992. On that date, his maximum possible parole period expired (see § 3000, subd. (a); § 3057, subd. (b)), and he was entitled to unconditional release. Under sections 2970 and 2972, however, a mentally disordered offender whose parole is approaching its final termination and who has been continuously provided mental health treatment by the State Department of Mental Health, either in a state hospital or in an outpatient program, while he or she was released from prison on parole, can be committed involuntarily for one year from the date of termination of parole for continued treatment at the end of his or her parole period if a court or jury finds that the "patient" has a severe mental disorder, that the patient's severe mental disorder is not in remission or cannot be kept in remission without treatment and that by reason of the severe mental disorder the patient represents a substantial danger of physical harm to others. Officials in charge of the mentally disordered offender's treatment may initiate a proceeding for continued involuntary treatment under sections 2970 and 2972 by submitting their written evaluation of the offender's remission (remission evaluation) to the district attorney of the county of commitment. (§ 2970.) The evaluation is to be submitted not later than 180 days before either the offender's parole terminates or the offender is due to be released from prison. (§ 2970.)

After January 17, 1992, when the staff at San Luis Obispo realized that defendant's condition had worsened, they considered recommending him for continued treatment proceedings. They placed defendant in an observation unit for evaluation. Then, over the next three or four weeks, they prepared supporting documentation for a remission evaluation. On March 2, 1992, the assistant warden for psychiatric services, a psychiatrist, sent a letter to the district attorney for San Bernardino County recommending proceedings for the continued treatment of defendant. The letter referred, albeit somewhat cryptically, to both Case No. 44305 and Case No. 44503.[4] It was sent just 99 days before June 9, when defendant was due to be released.

---

[4]It was headed:
  "RE:  KIRKLAND, William Ralph
  "SC:  44306, 44305, 44503
  "CDC:  D66439"

D. *The Preparation of the Petition for Continued Treatment.*

The March 2, 1992, letter from the assistant warden was referred to Supervising Deputy District Attorney Dwight Moore (Moore). Neither Moore nor anyone else in the prosecutors' office was familiar with sections 2970 and 2972. The office had no forms for section 2970 petitions.

Moore discovered that Haight had previously prosecuted defendant, and asked Haight to handle the continued treatment proceeding. Haight, however, was in trial. Moore therefore continued to work on the matter until Haight's trial was over.

Section 2972, subdivision (a) requires that the trial in a continued treatment proceeding "shall commence no later than 30 calendar days prior to the time the person would otherwise have been released . . . unless good cause is shown." Both Moore and Haight failed to note this 30-day deadline.

Apart from the 30-day deadline for commencement, however, the trial had to conclude before defendant's release date, and the prosecutors seem to have been aware of this. Moore tried to confirm defendant's release date. The assistant warden's letter indicated that defendant was due to be released on June 9, 1992, but both Moore and Haight, based on their experience in similar situations, felt that the date in the letter was untrustworthy. Moore also wanted to make sure that defendant had been subject to a prior section 2962 proceeding, which Moore understood was a prerequisite to a proceeding under section 2970.

On March 13, Moore spoke to Bill Baldridge (Baldridge), a social worker at San Luis Obispo. Baldridge told Moore that defendant had indeed been through a proceeding under section 2962. However, Baldridge also told Moore, incorrectly, that defendant was not due for release until August 1992.

On March 20, Moore spoke to Dan Hilford (Hilford), a deputy district attorney in San Luis Obispo County. Hilford confirmed that defendant had been the subject of a prior section 2962 proceeding. Hilford had forms for use in a section 2970 proceeding, which he agreed to send to Moore.

Around March 20, Haight finished the criminal case he was prosecuting and he took over the preparation and filing of the section 2970 petition. He began to familiarize himself with the relevant statutes, but he still overlooked the 30-day deadline for commencement of trial. Although Moore had verified that defendant had been paroled pursuant to section 2962, Haight

still needed to verify that defendant was in prison for a parole violation rather than for a new offense. It took about six weeks to determine that he was in custody for a parole violation. Meanwhile, Haight's secretary, Jean Limtiaco (Limtiaco), tried to confirm where defendant was being "housed."

On March 25 or 26, Haight received the sample petition forms from Hilford. However, Haight found them to be of no value. He obtained conservatorship forms and drafted a petition based on them.

Moore and Haight thought that the petition should be filed under the number of the case in which defendant was imprisoned, rather than under a new case number. They did not realize that defendant had been prosecuted in at least two distinct cases. Thus, they asked the court clerk for "the file" on defendant. The clerk gave them the file in Case No. 44503. Accordingly, on April 8, 1992, the prosecution filed the petition under Case No. 44503.

E.   *Proceedings on the Petition for Continued Treatment.*

Also on April 8, Limtiaco verified that defendant was at San Luis Obispo. However, that same day, defendant was transferred to the California Medical Facility at Vacaville (Vacaville) because he had become even more hostile and threatening.

On April 9, Haight obtained an "Order to Produce Prisoner for Trial" directed to San Luis Obispo. Normally, defendant would have been returned for trial two to four weeks later. Thus, two weeks later, Limtiaco called San Luis Obispo to follow up on the order. Only then did she learn that defendant had been transferred to Vacaville.

Limtiaco immediately called Vacaville and verified that defendant was there. On April 23, Haight obtained a new "Order to Produce Prisoner for Trial," this time directed to Vacaville. As a result, on May 11, defendant was sent from Vacaville to the California Institution for Men at Chino (Chino) in San Bernardino County.

On May 12, Haight returned a call from Jim Neal, a social worker at Vacaville. Neal told Haight that defendant's discharge date was June 9. That was when Haight first became aware that defendant was due to be released in June, and that the 30-day deadline for commencement of trial would not be met.

On May 13, Limtiaco verified that defendant had arrived at Chino. Also on May 13, at Haight's direction, Limtiaco had an investigator bring defendant directly from Chino to court, where defendant was arraigned. On May 14, counsel was appointed for defendant. Trial was set for June 2.

On May 28, defendant moved to dismiss the petition based on the failure to meet the aforesaid 180-day and 30-day deadlines. Defendant's motion to dismiss was heard on June 2, the first day of trial, and subsequently denied. Trial commenced on June 3. On June 4, 1992, a jury found that defendant had a severe mental disorder which was not in remission or could not be kept in remission without treatment and that by reason of his severe mental disorder defendant represented a substantial danger of physical harm to others. Accordingly, defendant was recommitted to Vacaville for further treatment pursuant to sections 2970 and 2972. Defendant filed a timely notice of appeal.

II

DISCUSSION

A. *Correction of Case Numbers.**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

B. *The Meaning of the Phrase "Continued Involuntary Treatment" as Used in Section 2970.*

Defendant contends that the trial court lacked jurisdiction to recommit him for continued involuntary treatment under section 2970 because he was not being involuntarily treated at the time the state mental health officials requested the district attorney to file a petition for continued involuntary treatment, or indeed at the time of the trial of the petition. He asserts that he received no treatment for his mental disorder from the time he was in custody for a parole violation on July 22, 1991, through June 4, 1992, the date of his recommitment under section 2972.

The Mentally Disordered Prisoners Act begins by providing for the treatment of a mentally disordered offender[7] by the State Department of Mental Health (Department) as a condition of parole. (§ 2962.) Such a parole condition is required if a chief psychiatrist of the Department of Corrections

---

*See footnote, *ante*, page 891.

[7]We use "mentally disordered offender" as shorthand for a person within the scope of the Act, which applies where: (1) "[t]he prisoner has a severe mental disorder that is not in remission or cannot be kept in remission without treatment" (§ 2962, subd. (a)); (2) "[t]he severe mental disorder was one of the causes of or was an aggravating factor in the commission of a crime for which the prisoner was sentenced to prison" (§ 2962, subd. (b)); (3) "the prisoner used force or violence or caused serious bodily injury" in committing the crime for which the prisoner was sentenced to prison (§ 2962, subd. (e)); (4) "[t]he prisoner has been in treatment for the severe mental disorder for 90 days or more within the year prior to the prisoner's parole or release" (§ 2962, subd. (c)); and (5) "by reason of his or her severe

certifies to the Board of Prison Terms (BPT) that the prisoner is a mentally disordered offender. (§ 2962, subd. (d).) The prisoner has a right to a hearing by the BPT on the chief psychiatrist's determination (§ 2966, subd. (a)), and to a hearing by the superior court (§ 2966, subd. (b)) on the BPT's determination that he or she meets the criteria of section 2962.

If during the parole period the parolee's mental disorder goes into remission and can be kept in remission, the Department shall discontinue treatment. (§ 2968.) If, however, the parolee remains a mentally disordered offender before the parole period terminates, the Act provides for continued treatment. Similarly, if the mentally disordered offender has refused to agree to treatment as a condition of parole, the Act provides for continued treatment if he or she remains a mentally disordered offender when he or she is due to be released from prison. (§§ 2970, 2972.)

Section 2970 provides, in pertinent part, that: "Not later than 180 days prior to the termination of parole, or release from prison if the prisoner refused to agree to treatment as a condition of parole as required by Section 2962, unless good cause is shown for the reduction of that 180-day period, . . . the medical director of the state hospital which is treating the parolee, or the community program director in charge of the parolee's outpatient program, or the Director of Corrections, shall submit to the district attorney of the county in which the parolee is receiving outpatient treatment, or for those in prison or in a state mental hospital, the district attorney of the county of commitment, his or her written evaluation on remission. . . .

"The district attorney may then file a petition with the superior court for continued involuntary treatment for one year. The petition shall be accompanied by affidavits specifying that treatment, while the prisoner was released from prison on parole, has been continuously provided by the State Department of Mental Health either in a state hospital or in an outpatient program."

Section 2972 provides, in pertinent part, that "[t]he court shall conduct a hearing on the petition under Section 2970 for continued treatment." (§ 2972, subd. (a).) "The trial shall commence no later than 30 calendar days prior to the time the person would otherwise have been released, unless the time is waived by the person or unless good cause is shown." (*Ibid.*) If the trier of fact finds "that the patient has a severe mental disorder, that the patient's severe mental disorder is not in remission or cannot be kept in

---

mental disorder the prisoner represents a substantial danger of physical harm to others." (§ 2962, subd. (d)(1).)

remission without treatment, and that by reason of his or her severe mental disorder, the patient represents a substantial danger of physical harm to others," the court shall order the offender recommitted, which recommitment shall be for one year from the date of termination of parole. (§ 2972, subd. (c).) The recommitment can be extended for additional one-year periods by the filing of a new petition and pursuant to proceedings conducted in accordance with section 2972. (§ 2972, subd. (e).)

The similarity of language and legislative scheme persuades us that sections 2970 and 2972 were substantially derived from section 1026.5, subdivision (b), which permits the extended commitment of a defendant committed for treatment after being found not guilty by reason of insanity. The officials in charge of such a defendant may initiate extended commitment proceedings by notifying the prosecuting attorney at least 180 days before the end of the maximum term of commitment. (§ 1026.5, subd. (b)(2).) The prosecuting attorney may file an extended commitment petition but it must be filed at least 90 days before the end of the original commitment unless good cause is shown (§ 1026.5, subd. (b)(2)), and trial must commence at least 30 days before the defendant would otherwise be released. (§ 1026.5, subd. (b)(4).) If the trier of fact finds that the person has been committed under section 1026 for a felony and "by reason of a mental disease, defect or disorder [the defendant] represents a substantial danger of physical harm to others" (§ 1026.5, subd. (b)(1)), the commitment may be extended for two years. (§ 1026.5, subd. (b)(8).)

Other cognate provisions are former section 6316.2 of the Welfare and Institutions Code (repealed 1981), which permitted the extended commitment of a defendant committed for treatment as a mentally disordered sex offender if the mentally disordered sex offender "presents a substantial danger of bodily harm to others" (Welf. & Inst. Code, former § 6316.2, subd. (a)(2), repealed 1981); and Statutes 1982, chapter 650, section 2, page 2667, which, despite the repeal of the mentally disordered sex offender laws, permits the extended commitment of mentally disordered sex offenders who were committed prior to the repeal. (See generally, *Baker* v. *Superior Court* (1984) 35 Cal.3d 663, 668 [200 Cal.Rptr. 293, 677 P.2d 219].)

When defendant was returned to physical custody at San Luis Obispo in August 1991, following his final parole violation, he refused all treatment, including antipsychotic medication, group therapy, and other therapy. Thus, he received no treatment while in custody. Defendant argues that a petition for "continued involuntary treatment" under section 2970 was inappropriate because "continued" treatment means treatment provided continuously up until the filing of the petition under section 2970, or perhaps until trial. In

other words, a person's treatment cannot be "continued" if he or she was not being treated previously. Defendant also argues that "continued" and "involuntary" must be read together—that is, the mentally disordered offender's previous treatment (assuming there was such) must have been involuntary. Both of his contentions, however, conflict with the fact that section 2970 provides that "continued involuntary treatment" proceedings apply to offenders who have consented to be treated as a condition of parole, as well as to offenders who have refused such treatment as a condition of parole.

The Legislature apparently intended a mentally disordered offender to complete his or her parole, because it authorized mental health officials in charge of the offender to initiate proceedings for continued treatment under section 2970 "[n]ot later than 180 days prior to the termination of parole." (§ 2970.)

If a mentally disordered offender refuses to agree to treatment as a condition of his or her parole, parole must be revoked and the offender returned to prison. (See § 3060.5.) Accordingly, section 2970 provides, in the alternative, that mental health officials may commence section 2970 proceedings "[n]ot later than 180 days prior to . . . release from prison if the prisoner refused to agree to treatment as a condition of parole as required by Section 2962 . . . ."

■ Finally, a mentally disordered offender might accept parole with a treatment condition but later violate it, by failing to receive treatment or by other conduct. Consequently, his parole would be revoked and he would be returned to physical custody. Defendant was in this category from July 22, 1991 to June 4, 1992. Although the Legislature did not include this situation in section 2970 as explicitly as might be desired, we are convinced by the findings and declarations in section 2960 and the language and scheme of section 2962 that section 2970 is intended to apply to all mentally disordered offenders who are subject to treatment as a condition of parole, including those who agree to treatment as a condition of parole, are released on parole and then violate parole, resulting in parole revocation and return to custody. We construe "the termination of parole" in the first clause of section 2970 as including unsuccessful parolees as well as successful ones. Thus, section 2970 permits the initiation of proceedings for continued treatment of an offender who at the time of such initiation is in physical custody for parole violations.

■ In each of the three situations enumerated above, section 2970 provides for the filing of "a petition . . . for continued involuntary treatment." It requires the petition to "be accompanied by affidavits specifying

that treatment, while the prisoner was released from prison on parole, has been continuously provided by the State Department of Mental Health either in a state hospital or in an outpatient program."

This poses an obvious conundrum. If the mentally disordered offender has refused to agree to treatment as a condition of parole, in what sense is the petition for "continued treatment"? And how can the affidavits in such a case truthfully state that treatment "has been continuously provided"? On the other hand, if the offender has agreed to treatment as a condition of parole, in what sense is the petition for "continued *involuntary* treatment"?

The Act was intended to "provide for the treatment of certain convicted felons . . . as a condition of parole, and after the expiration of parole for renewable one-year periods." (Leg. Counsel's Dig., Sen. Bill No. 1296 (1985-1986 Reg. Sess.).) We believe that the Legislature described treatment under section 2970 as "continued" because it continues the treatment the offender was to receive or was receiving as a condition of parole.

Section 2970 is apparently derived from statutes dealing with treatment of persons found not guilty by reason of insanity (§ 1026.5, subd. (b)) and of mentally disordered sex offenders (Welf. & Inst. Code, former § 6316.2, subd. (a)(2), repealed 1981; Stats. 1982, ch. 650, § 2, p. 2667). Such persons, by definition, have been initially committed for treatment. As noted, these statutes also permit the extension of the initial commitment.

Section 2970, similarly, is aimed primarily at mentally disordered offenders who have already been paroled on condition that they be treated. Thus, a mentally disordered offender normally has already undergone treatment as a condition of parole pursuant to section 2962 and section 2970 simply provides for the continuation of this initial treatment.

Section 2970, however, unlike statutes from which it is derived, is also aimed secondarily at exceptional cases: mentally disordered offenders who have not undergone treatment as a condition of parole, either because they refused to accept this parole condition, or because their parole was revoked. While the section's reference to "continued treatment" of such persons is perhaps awkward, we believe it is readily understood, in light of its derivation, as referring to continuation of the treatment to which the offender was required to submit as a condition of parole, even if the offender never

actually underwent such treatment or received it sporadically due to repeated releases on parole and then subsequent revocations.[8]

Section 2970 therefore does not require "continuous treatment" immediately before the mental health officials transmit their remission evaluation to the district attorney or at the time the recommitment petition is tried. Although it requires the affidavits supporting the petition to state that "treatment *while the prisoner was released from prison on parole*, has been continuously provided" (italics added), there is no jurisdictional requirement that the prisoner have received continuous treatment *other than* while released on parole.[9]

Referring to defendant's other contention, that such continuous treatment had to be involuntary, we disagree. It is our conclusion that the Legislature, by describing a petition under section 2970 as one for "continued involuntary treatment," did not intend to require the treatment being continued—the *previous* treatment—to have been involuntary. Furthermore, it elsewhere described the petition simply as a petition for "continued treatment." (§ 2972, subd. (a).) Rather, the Legislature described the continued treatment sought to be imposed pursuant to the petition—the *subsequent* treatment—as "involuntary" because the defendant is involuntarily committed for such treatment. This finds support in the provision that "the person committed shall be considered to be an *involuntary* mental health patient . . . ." (§ 2972, subd. (g), italics added.)

This reading of section 2970 is compelled if it is to be applicable, as the Legislature intended, both to parolees who have consented to treatment as a condition of parole and to prisoners who have refused to consent to treatment as a parole condition.

Defendant, however, would argue that a prisoner who has refused to consent to treatment as a condition of parole and who is in prison as a result

---

[8]Alternatively, the Legislature may have described treatment under section 2970 as "continued" because it continues the 90 days or more of treatment within the preceding year which the offender received and which is a prerequisite to be eligible for proceedings under section 2962 (§ 2962, subd. (d)(1)), and hence to be eligible subsequently for proceedings under section 2970.

[9]The Department of Corrections (Corrections) concurs in this interpretation of the affidavit requirement. It has prepared a form affidavit to be used in section 2970 proceedings. The form was used in this case. It recites that: "The above-name [*sic*] individual is *either* (1) a Mentally Disordered Offender who has been continuously treated as a condition of parole at this hospital or community treatment program during this parole period pursuant to Penal Code Section 2962 *or* (2) an inmate who has refused treatment as a condition of parole." (Italics added.) Thus, Corrections recognizes that the continuous-treatment requirement does not apply to a prisoner who has refused treatment as a condition of parole.

need not remain untreated. Indeed, he faults prison officials because they did not inject him with antipsychotic drugs against his will. He claims that their failure to do so entitles him to go free, despite the uncontested finding that he presents a substantial danger of physical harm to others.

The Act, however, imposes no obligation on the Department to provide mentally disordered offenders with either continuous or involuntary treatment while in prison. The Act does provide that commitment under section 2972 to a treatment facility "places an affirmative obligation on the treatment facility to provide treatment." (§ 2972, subd. (f).) It could have placed a similar obligation on prison officials, but did not.

In a preamble to the Act, "[t]he Legislature finds . . . that severely mentally disordered prisoners should be provided with an appropriate level of mental health treatment while in prison . . . ." (§ 2960.) When the Act was pending in the Legislature, the Assembly Committee on Public Safety repeatedly criticized the bill because it "provides no enforcement for this declaration nor does it define 'appropriate treatment.' . . . [¶] . . . The bill does not specify the level or quality of treatment required prior to release." (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 1296 (1985-1986 Reg. Sess.) as amended June 25, 1985, p. 3; Assem. Com. on Public Safety, Analysis of Sen. Bill No. 1296 (1985-1986 Reg. Sess.) as amended Aug. 19, 1985, p. 3; Assem. Com. on Public Safety, Analysis of Sen. Bill No. 1296 (1985-1986 Reg. Sess.) as amended Aug. 26, 1985, p. 3.) Nevertheless, the bill was never amended to correct this perceived defect. We must assume that the Legislature determined to encourage, but not to require treatment of mentally disordered offenders in prison.

Actually, the Act does require treatment of prisoners, and thus effectuates the legislative declaration, in one respect: it requires that a prisoner must have received at least 90 days of treatment in the preceding year in order to be subject to treatment as a condition of parole (§ 2962, subd. (d)(1)) and, consequently, in order to be subject to continued treatment under sections 2970 and 2972. Thus, it clearly does not require continuous treatment as a predicate for proceedings under section 2962. We believe that it equally does not require continuous treatment as a predicate for proceedings under sections 2970 and 2972.

Defendant's position—that prison officials must provide continuous treatment, involuntarily, if necessary, to mentally disordered offenders imprisoned after refusing to accept treatment as a condition of parole or after violating parole, and that if they fail to do so, the prisoner is exempt from continued treatment proceedings under sections 2970 and 2972—leads to

absurdities. ■ Prison officials cannot force a prisoner to undergo medical treatment involuntarily if the prisoner is competent to refuse treatment, unless treatment is required by prison security or a similar countervailing state interest. (*Thor* v. *Superior Court* (1993) 5 Cal.4th 725, 749 [21 Cal.Rptr.2d 357, 855 P.2d 375].) Specifically, prison officials cannot submit a prisoner to long-term involuntary treatment with antipsychotic drugs unless it is found, in a judicial proceeding, that, among other things, ". . . the prisoner is incompetent to refuse medication." (*People* v. *Thomas* (1990) 217 Cal.App.3d 1034, 1037 [266 Cal.Rptr. 295]; *Keyhea* v. *Rushen* (1986) 178 Cal.App.3d 526, 541 [223 Cal.Rptr. 746].) ■ Could a mentally disordered offender defeat the continued treatment provisions of sections 2970 and 2972 simply by exercising his or her right to refuse treatment while in prison? Or would that ploy work only if the offender is actually incompetent to refuse treatment? If the latter, then prison officials would have to file a judicial proceeding to determine the competency of every mentally disordered offender who refused treatment, even if they really believed the offender was competent and a *Keyhea* proceeding was unfounded; otherwise, the prisoner could later claim to have been incompetent in the hope of avoiding continued treatment proceedings.

Defendant may find it unfair that prison officials may detain him without treatment during his parole term only to subject him, at the end of his parole term, to further detention for the purpose of treatment. Defendant could have avoided imprisonment, however, merely by adhering to the conditions of his parole, including treatment. Even after he violated his parole and was reimprisoned, he was offered treatment; he simply refused to accept it. Mentally disordered offenders who comply scrupulously with their parole conditions are subject to continued treatment under sections 2970 and 2972 if they remain a substantial danger of physical harm to others. Similarly, mentally disordered offenders whose parole is revoked but who accept treatment while in prison also remain subject to continued treatment proceedings. What would be truly unfair would be recommitting mentally disordered offenders who have cooperated with efforts to treat them while they were on parole, and yet setting defendant free precisely because he refused any treatment.

We do not mean to condone the denial of treatment to a mentally disordered offender who is imprisoned. Prison officials' failure to provide treatment to a mentally disordered offender who wants it arguably might rise to deliberate indifference to a prisoner's serious medical need so as to violate the Eighth Amendment to the United States Constitution. Indeed, at least one court has found the Eighth Amendment violated by a failure to administer antipsychotic drugs to a paranoid schizophrenic prisoner *involuntarily*. (*Arnold on Behalf of H.B.* v. *Lewis* (D.Ariz. 1992) 803 F.Supp. 246,

258.) An Eighth Amendment violation presumably would result in damages or an injunction requiring treatment. By contrast, defendant's claim that failure to treat him involuntarily from July 21, 1991, through June 4, 1992, bars proceedings for continued treatment under sections 2970 and 2972, if upheld, would not entitle him to treatment, or to any remedy for the lack of treatment; it would only release him, untreated and concededly dangerous, upon the public.

In conclusion we hold that neither continuous nor involuntary treatment of a mentally disordered offender reimprisoned for parole violations is a jurisdictional prerequisite of continued treatment proceedings under sections 2970 and 2972.

C. *Validity of a Recommitment Order When the Remission Evaluation Is Submitted Untimely and the Beginning of Trial on a Continued Treatment Petition Is Untimely.*

1. *Remission Evaluation Submission—the 180-Day Deadline.*

■ As noted above, section 2970 requires the officials in charge of a mentally disordered offender whose mental disorder is not in remission, or cannot be kept in remission without treatment, to submit a written evaluation on remission to the district attorney "[n]ot later than 180 days prior to the termination of parole, or release from prison if the prisoner refused to agree to treatment as a condition of parole . . . , unless good cause is shown for reduction of that 180-day period . . . ." Defendant's maximum possible parole period was to expire on June 9, 1992, and he was due to be released on that date. Thus, the proper officials should have submitted their evaluation of defendant to the district attorney by December 12, 1991. Instead, it was sent on March 2, 1992, by the psychiatrist in charge of defendant at San Luis Obispo to the District Attorney of San Bernardino, 99 days before defendant's parole termination date; the district attorney's office received it a few days later.

The trial court found that there was good cause for the late notice because defendant did not "turn[] acute" until January 1992. Defendant contends the recommitment order was void because the remission evaluation was untimely sent to the district attorney, and the trial court abused its discretion in finding that the People had shown good cause for the late submission.

We review the trial court's finding under the deferential "abuse of discretion" standard. (See *People* v. *Szeto* (1981) 29 Cal.3d 20, 29 [171 Cal.Rptr. 652, 623 P.2d 213] [trial court's finding of good cause for delay in the face

of defendant's speedy trial claim reviewed under abuse of discretion standard]; *People* v. *Johnson* (1980) 26 Cal.3d 557, 570 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255] [same].)

First, we look to cases arising under section 1026.5, subdivision (b), and Welfare and Institutions Code former section 6316.2, which, as noted above (see pt. II.B, *ante*), set analogous deadlines in proceedings to extend the commitment of defendants found not guilty by reason of insanity, and mentally disordered sex offenders, respectively. It has been held that such deadlines are directory, not jurisdictional. (*People* v. *Mord* (1988) 197 Cal.App.3d 1090, 1116-1117 [243 Cal.Rptr. 403] [180-day deadline of section 1026.5]; *People* v. *Dias* (1985) 170 Cal.App.3d 756, 762 [216 Cal.Rptr. 295] [90-day and 30-day deadlines of Welf. & Inst. Code, § 6316.2]; see also *People* v. *Smith* (1990) 224 Cal.App.3d 1389, 1395 [274 Cal.Rptr. 591], for an instructive discussion of whether a time deadline is directory or mandatory in the jurisdictional sense when applied to the time period within which to retry the issue of restoration of sanity under section 1026.2, subdivision (e).) Some of those deadlines, however, unlike the deadlines with which we are concerned, do not expressly permit extensions for good cause.

Second, at the urging of defendant, we will assume, without deciding, that unlike the merely directory deadlines of these analogous sections, the deadlines of sections 2970 and 2972 are jurisdictional. But we must also recognize that sections 2970 and 2972 expressly permit extensions of the deadlines for good cause. Thus, the trial court loses jurisdiction, if at all, only if the prosecution's delay is without good cause. We have found no cases analyzing the necessary showing for "good cause" as used in sections 2970 and 2972, but it appears that no greater showing should be required than would be necessary to justify a complete failure to meet the deadlines of sections 1026.5 and Welfare and Institutions Code former section 6316.2.

Delay beyond those deadlines is judged using "[t]he due process test utilized under both federal and state speedy trial decisions[, which] involves a balancing of any prejudicial effect of the delay against the justification for delay. [Citations.] Except where there has been an extended delay, . . . prejudice will not be presumed . . . . [I]t is incumbent upon the defendant to show circumstances of actual prejudice. (See *Crockett* v. *Superior Court* (1975) 14 Cal.3d 433, 440-441 [121 Cal.Rptr. 457, 535 P.2d 321].)" (*In re Johns* (1981) 119 Cal.App.3d 577, 581 [175 Cal.Rptr. 443]; accord *People* v. *Dougherty* (1983) 143 Cal.App.3d 245, 247-248 [191 Cal.Rptr. 668].)

Defendant claims he was prejudiced by the People's failure to meet the 180-day deadline because his counsel had inadequate time to prepare for

trial, and particularly to develop an attorney-client relationship with defendant and to seek a psychiatrist. In so arguing, however, defendant relies on cases dealing with the 90-day deadline for filing a petition under section 1026.5 and Welfare and Institutions Code former section 6316.2. In those cases, the prosecuting attorney's failure to meet the 90-day filing deadline was held prejudicial because it deprived the defendant of adequate time to prepare for trial. (*People* v. *Dougherty, supra,* 143 Cal.App.3d at p. 249; *People* v. *Hawkins* (1983) 139 Cal.App.3d 984, 988 [189 Cal.Rptr. 126]; *People* v. *Hill* (1982) 134 Cal.App.3d 1055, 1059 [185 Cal.Rptr. 64].)

Sections 2970 and 2972, by contrast, contain no 90-day filing deadline for filing the petition for continued treatment. To the contrary: although the Legislature adopted the 180-day and 30-day deadlines of section 1026.5 and Welfare and Institutions Code former section 6316.2 (see also Stats. 1982, ch. 650, § 2, p. 2667), respectively, for filing petitions under those sections, the Legislature significantly did *not* adopt a 90-day deadline (or any other deadline) for filing a petition for continued treatment. Thus, the district attorney is not statutorily required to file such a petition at any particular time or to give to the defendant at any particular time notice of the initiation of continued treatment proceedings.

The 180-day deadline only refers to the time appropriate mental health officials should submit their remission evaluation to the district attorney. It ensures the district attorney adequate time to decide whether to file the petition, file it, and to prepare for trial. It does not ensure the defendant any particular amount of time to prepare. If the 180-day deadline is met—or even if it is not met—the district attorney's delay in filing the petition and in prosecuting continued treatment proceedings does not offend the statute (subject, of course, to the requirement that the trial commence at least 30 days before the defendant's parole termination date; see pt. II.C.2, *post*).

Here, even though the mental health officials gave their remission evaluation to the district attorney belatedly, there was still enough time from March 2, 1992 (the submission date) for the district attorney to file the petition, for the trial court to give the defendant a copy of the petition and advise him of his rights to counsel and a jury trial, and for defendant to prepare for trial. Indeed, defendant argues that it was the district attorney's negligent delay *after* receiving the March 2 remission evaluation that deprived him of time to prepare for trial.

Although we find no statutory requirement that the district attorney timely file a petition and give the defendant timely notice of the filing of the petition, we do not mean to suggest that the district attorney is free to

procrastinate in performing such acts to the defendant's prejudice. Defendant's claim that by reason of the district attorney's neglect and procrastination his counsel had inadequate time to prepare for trial does invoke defendant's right to due process. We discuss this due process claim in part II.C.3, *post*. We do, however, hold that defendant failed to show any prejudice resulting specifically from the People's failure to meet the 180-day deadline for submission of the remission evaluation.

One court has held that where the defendant fails to show prejudice, "consideration of the reasons for the delay is unnecessary." (*In re Johns, supra,* 119 Cal.App.3d at p. 581; cf. *Crockett v. Superior Court, supra,* 14 Cal.3d at pp. 437-440 [refiling of charges dismissed on speedy trial grounds permitted unless defendant shows prejudice from delay].) We need not go so far here, because in our view the prosecution showed, and the trial court properly found, good cause for delay.

Under the analogous section 1026.5, good cause for a failure to meet statutory deadlines exists if the proceeding is based on a particular incident that occurred after the deadline. (*People v. Mord, supra,* 197 Cal.App.3d at p. 1117 [good cause existed for delay past 180-day deadline where proceeding was based on defendant's possession of shotgun, reported to authorities 163 days or less before end of term]; *People v. Echols* (1982) 138 Cal.App.3d 838, 842-843 [188 Cal.Rptr. 328] [good cause existed for delay past 90-day deadline for filing petition where proceeding was based on a shooting 83 days before end of term].) Thus, "an unexpected and most marked change in [the defendant's] condition" after the deadline may constitute good cause. (*People v. Hill, supra,* 134 Cal.App.3d at p. 1060 [dictum].)

Here, the continued treatment proceeding was triggered by a deterioration in defendant's condition which first appeared to mental health officials in early January 1992, and which they confirmed when they reexamined defendant on January 17, 1992. In our view, from that point on, the mental health staff at San Luis Obispo acted with due diligence in preparing and sending the necessary documentation to the district attorney.

Although there is testimony that defendant wrote threatening letters on December 7 and 10, 1991, and that a staff report regarding those letters was dated December 11, 1991, neither the letters nor the staff report was introduced into evidence. We therefore cannot conclude from such limited evidence that the content of either the letters or the report was such that it should have induced the mental health officials at San Luis Obispo to determine that at those times defendant was not in remission and, therefore, to immediately begin preparation of a remission evaluation.

In summary, we find that the trial court's finding that there was good cause for the People's failure to meet the 180-day deadline for submission of the remission evaluation was not an abuse of discretion and it did not err in denying defendant's motion to dismiss as posited on those grounds.

2. *Trial of Continued Treatment Petition—The 30-day Deadline.*

■ Defendant also asserts that the recommitment order is void because the trial of the continued treatment petition did not begin at least 30 days before the parole termination date of June 9, 1992, as required by section 2972, and no good cause was shown for beginning the trial later.

Section 2972, subdivision (a) provides that "[t]he trial shall commence no later than 30 calendar days prior to the time the person would otherwise have been released, . . . unless good cause is shown." Here, trial should have commenced on May 10, 1992; instead, it was set for June 2, 1992,[10] and it actually began on June 3, 1992, just six days before defendant was due to be released because his parole term had expired. The trial court never explicitly determined whether there was good cause for the delay. Instead, it denied defendant's motion to dismiss because it found that the late trial commencement did not violate defendant's due process rights.

Like the 180-day requirement, the 30-day requirement does not have as its primary purpose the enhancement of the defendant's ability to prepare for trial. Arguably it may shorten the preparation time the defendant might otherwise have. Rather, we believe the purpose of the 30-day requirement is to ensure that the trial can be concluded before the defendant is due to be released. Partly, this benefits the defendant: the defendant need not remain confined beyond the release date pending the end of trial. (*People* v. *Hill, supra,* 134 Cal.App.3d at p. 1057 [construing 30-day requirement in proceedings to extend commitment of defendants found not guilty by reason of insanity, § 1026.5, subd. (b)].) Partly, it benefits the public: trial can be completed before a severely mentally disordered prisoner who poses a substantial danger of physical harm to others must be released. (*People* v. *Curtis* (1986) 177 Cal.App.3d 982, 989 [223 Cal.Rptr. 397] [construing 30-day requirement in proceedings to extend commitment of mentally disordered sex offenders, Welf. & Inst. Code, former § 6316.2].)

Defendant claims that the People's failure to meet the 30-day deadline was prejudicial because it deprived his counsel of adequate time to prepare

---

[10]Arguably defendant waived his claim regarding the 30-day deadline by failing to object when trial was set beyond the deadline. (See *People* v. *Wilson* (1963) 60 Cal.2d 139, 146 [32 Cal.Rptr. 44, 383 P.2d 452] ["The right to a speedy trial . . . will be deemed waived unless the defendant *both* objects to the date set *and* thereafter files a timely motion to dismiss" (original italic).]) Neither of the parties has raised or briefed this point, however, and therefore we, too, pass over it and rest our opinion on other grounds.

for trial. However, "[t]he showing of actual prejudice which the law requires must be supported by particular facts and not . . . by bare conclusionary statements." (*Crockett* v. *Superior Court, supra,* 14 Cal.3d at p. 442 [speedy trial claim]; accord, *People* v. *Echols, supra,* 138 Cal.App.3d at p. 842 [delay in § 1026.5 extended commitment proceeding].) Actually, it was the time lapse in preparing and filing the petition and in having defendant transported from prison and produced in court for arraignment and appointment of counsel (a time lapse which *also* led to the failure to meet the 30-day deadline), rather than the failure to meet the 30-day deadline in itself, which caused defendant's claimed lack of time to prepare.

Trial began on June 3, 1992; it ended the next day, June 4, 1992. Thus, it concluded before June 9, when defendant was due to be released. Under these circumstances, defendant cannot claim prejudice from the trial not beginning at least 30 days before his release date.

Moreover, in our view, the prosecution showed good cause for its delay in not bringing the case to trial by May 11, 1992. As with the failure to meet the 180-day deadline, a major cause of the failure to meet the 30-day trial commencement deadline was the fact that defendant's mental condition worsened relatively close to his release date. Thus, the prosecutors were playing "catch-up."

Defendant understandably makes much of the prosecutors' initial ignorance of the existence of the continued involuntary commitment proceedings and particularly the 30-day deadline, which ignorance was indeed, as the trial court found, negligent. Nevertheless, they knew as a practical matter that they had to conclude the proceeding before defendant was due to be released. Once they received the March 2 letter, they proceeded reasonably promptly.

Although Haight was in trial, Moore did some of the necessary preparatory work. The psychiatrist's remission evaluation of March 2, 1992, recited that defendant's release date was June 9, but the prosecutors had, as the trial court found, an "honest distrust" of the information in the report. Moore therefore attempted to confirm the release date. Unfortunately, on March 13, 1992, Baldridge, a licensed clinical social worker and a cosigner of the March 2, 1992, remission evaluation, misinformed Moore by telephone that defendant was due for release in August 1992. The prosecutors were entitled to rely on correctional officials' calculations. (*People* v. *Minahen* (1986) 179 Cal.App.3d 180, 191 [224 Cal.Rptr. 460] [correctional officials' error in calculating defendant's term constituted good cause for prosecution's late filing of petition under § 1026.5 to extend commitment of defendant found

not guilty by reason of insanity].) Although Baldridge technically was not a correctional official, he acted in the role of such an official in regards to defendant because he was one of defendant's mental health custodial officials at San Luis Obispo.

As soon as Haight completed his criminal trial, he took over from Moore and prepared and filed the petition. The fact that the prosecutors were unfamiliar with proceedings under sections 2970 and 2972 necessitated additional work, such as obtaining sample forms for the petition, rejecting the forms, and then drafting an original petition. Thus, the trial court found that, given the misinformation regarding defendant's release date, the prosecutors "proceeded with some reasonable speed . . . ."

The petition was filed on April 8, 1992. That same day—also the day the prosecutors confirmed that defendant was in Vacaville, and prepared an order directing Vacaville to produce him in court—defendant was moved from Vacaville to Chino without the prosecutors being notified of such at that time. Normally, it took two to four weeks to transport an inmate for trial. Thus, if defendant had remained in Vacaville, there was a "reasonable chance" that he could have been produced by May 1, 1992. The trial court found that this was the single "most important" delay in the proceedings.

In sum, three factors, each beyond the prosecutors' control—the late remission evaluation, the misinformation regarding defendant's release date, and defendant's ill-timed move to Vacaville—appear to have been the major reasons for their failure to meet the 30-day deadline. The prosecutors' ignorance of the 30-day deadline, although culpable, was not a major reason for the failure. The prosecutors reasonably believed that defendant's release date was in August 1992; thus, even if they had known of the 30-day deadline, under the circumstances, they probably would have filed the petition and gone to trial when they did.

Defendant also complains that the prosecutors, who could have picked him up directly from prison, relied on prison officials to transport him instead, and moreover that the prosecutors used only a two-week "tickler" system to follow up on compliance with the transportation orders. Again, however, since the prosecutors believed that defendant was not due to be released until August, this conduct was reasonably diligent. Indeed, despite all the other delays in the case, if only defendant had remained at San Luis Obispo the prosecutors might well have met the 30-day deadline.

We emphasize that given defendant's failure to show prejudice, only a minimal showing of prosecutorial diligence was necessary to establish good

cause. We hold that the prosecution's failure to meet the 30-day deadline did not cause defendant any cognizable prejudice, and the prosecution delay, which resulted in the late beginning of trial, was reasonably justifiable. Therefore, the trial court did not abuse its discretion in denying the motion to dismiss as posited on the failure to begin the trial on May 11, 1992.

### 3. *Due Process Requirements.*

■ Finally, as already discussed, defendant's claim and attempted showing that his counsel had inadequate time to prepare for trial is insufficient to establish that he was actually prejudiced by the failure to meet either the 180-day or the 30-day deadlines. However, this contention does invoke defendant's due process rights. Undoubtedly the defendant in a continued treatment proceeding has a due process right to a reasonable amount of time to prepare for trial. (See *People* v. *Courts* (1985) 37 Cal.3d 784, 790 [210 Cal.Rptr. 193, 693 P.2d 778] [failure to give counsel reasonable time to prepare defense denies due process]; *People* v. *Wilkins* (1990) 225 Cal.App.3d 299, 304 [275 Cal.Rptr. 74] [denial of reasonable continuance to allow defendant in propria persona to present defense denies due process].)

Defendant had the burden of demonstrating that the time afforded him for trial preparation was unreasonable. He urged in the trial court that his counsel had inadequate time (1) to establish an attorney-client relationship with him, and (2) to obtain expert psychiatric witnesses for his defense. The trial court, however, found that "the defendant's due process rights were not so violated by the delays that he could not receive a full and fair hearing."

The record reveals that counsel was appointed to represent defendant on May 14, 1992, and trial was set for June 2, 1992. Although defendant's counsel claimed that he had insufficient time to obtain defense experts, he never actually requested the appointment of any experts. The trial court found that it would have granted such a request, and would have made sure that the experts' reports were finished in time. Thus, the trial court found that "there was sufficient time, with the defendant's cooperation, . . . for the defense to prepare this case for hearing."

Regarding defendant's claim that he had insufficient time to establish an attorney-client relationship with his attorney, counsel admitted that it was "clear from [defendant's] actions on May the 14th [when counsel was appointed] it was gonna be difficult for me to have any relations with him." On May 20, when they next met, defendant refused to speak to his counsel. A lack of time to prepare for trial does not violate due process where it results from the defendant's failure to cooperate with his or her own counsel.

(*People* v. *Grant* (1988) 45 Cal.3d 829, 844 [248 Cal.Rptr. 444, 755 P.2d 894].)

Defendant argues that, unlike a mentally well defendant, he should not be held accountable for his failure to cooperate in his own defense. Assuming, without deciding, that in a particular case due process might require a court to afford a mentally ill defendant more time to prepare for trial when necessary to overcome problems presented by the defendant's mental illness, that was not the case here; defendant failed to show that more time would have solved the problem. Defendant remained uncooperative even at trial. He demanded self-representation, stating, "I'm not going to let that dago represent me." Eventually, he refused to leave his cell and come to court. Regardless of whether this lack of cooperation was defendant's "fault," it certainly was not the prosecution's.

The trial court did not abuse its discretion in finding that defendant's time to prepare for trial was not so short as to violate his due process rights and it did not err in denying defendant's motion to dismiss based on that assertion.

### DISPOSITION

The order appealed from is affirmed.

Hollenhorst, Acting P. J., and McKinster, concurred.

Appellant's petition for review by the Supreme Court was denied July 27, 1994.