[No. C026653. Third Dist. Sept. 19, 1997.]

LAVANN M. ZACHARY, Petitioner, v.
THE SUPERIOR COURT OF SAN JOAQUIN COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

Gerald Gleeson, Public Defender, Ellen S. Schwarzenberg and David S. Adams, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

Daniel E. Lungren, Attorney General, and Harry Joseph Colombo, Deputy Attorney General, for Real Party in Interest.

OPINION

PUGLIA, P. J.—Imprisoned for conviction of forcible rape (Pen. Code, § 261, former subd. (2)) and resisting an executive officer (Pen. Code, § 69), petitioner was paroled in 1990 and as a condition thereof, involuntarily committed to Atascadero State Hospital, pursuant to article 4, chapter 7, title I, part III of the Penal Code which has been referred to as the "Mentally Disordered Prisoners Act" (MDPA). (Pen. Code, § 2960 et seq.; *People v. Kirkland* (1994) 24 Cal.App.4th 891, 894-895 [29 Cal.Rptr.2d 863]; further statutory references to sections of an undesignated code are to the Penal Code.) Since then, petitioner has been recommitted to the state hospital from year to year, pursuant to section 2972 of the MDPA. His most recent one-year hospital commitment expired on March 15, 1997. The District Attorney of San Joaquin County neglected to file a petition to extend the

commitment until 24 days after the most recent commitment expired. Petitioner moved to dismiss the petition for extension of the commitment. The respondent superior court denied the motion. Petitioner seeks an extraordinary writ either to compel the respondent court to reverse its order denying the motion or to prohibit the court from proceeding further on the petition. We shall order a writ of mandate to issue.

I

In April 1990, as a condition of parole, petitioner was committed to Atascadero State Hospital, pursuant to sections 2962 to 2966 of the MDPA. Prior to the discharge of petitioner's parole, the People successfully moved to extend petitioner's hospital commitment for one year, pursuant to sections 2970 and 2972 of the MDPA. Petitioner's hospital commitment has been extended from year to year since then pursuant to subdivision (e) of section 2972.[1] Petitioner's most recent MDPA commitment extension expired on March 15, 1997.

On September 9, 1996, more than 180 days prior to the expiration of petitioner's most recent commitment extension (see § 2970), the medical director of Atascadero State Hospital submitted to the San Joaquin County District Attorney an "evaluation on remission" form regarding petitioner. The medical director opined petitioner had a severe mental disorder which could not be kept in remission without treatment, as evidenced by the fact that during the previous year petitioner did not voluntarily follow his treatment plan, and as a result petitioner represented a substantial danger of physical harm to others.

The medical director attached to his evaluation a psychiatric report, entitled "Recommended Continuing Care Plan/Discharge Summary," dated August 28, 1996, which was prepared by an Atascadero State Hospital staff psychiatrist. The psychiatrist indicated petitioner was diagnosed as a chronic paranoid schizophrenic, had been generally stabilized on psychotropic medications except for occasional auditory hallucinations, and had made progress in his treatment except that he refused to participate in a drug abuse

---

[1]Petitioner was discharged from parole on April 10, 1993; his MDPA commitment was extended for one year by judgment entered March 15, 1993 and reextended for another year by judgment entered April 26, 1994. The latter judgment directed that petitioner's commitment be extended until March 15, 1995. We affirmed the March 15, 1993, judgment in *People v. Zachary* (Jan. 27, 1995) C015844, nonpublished opinion, and the April 26, 1994, judgment in *People v. Zachary* (July 11, 1995) C018656, nonpublished opinion. The parties do not dispute that petitioner's commitment was further extended by judgments entered in 1995 and 1996.

On the People's motion, we take judicial notice of our records in *People v. Zachary*, C015844, and *People v. Zachary*, C018656.

support program despite acknowledging his past drug abuse. The psychiatrist explained that petitioner had been released to out-patient conditional release programs three times, each time absenting himself without leave and using illegal drugs, and had most recently walked away from such a release program in May 1995 before abusing cocaine and alcohol and admitting himself to a local psychiatric health facility. The psychiatrist concluded that "because of [petitioner's] refusal to participate in a drug prevention program, he cannot be kept in remission without treatment," and that petitioner is at a high risk for further dangerous behavior given his past history of sexual and physical assaultive behavior.

On April 8, 1997, 24 days *after* petitioner's commitment expired, the People petitioned in the respondent superior court for extension of petitioner's commitment for an additional year, pursuant to subdivision (e) of section 2972.

Petitioner moved to dismiss the petition on the ground it was untimely and a denial of due process because subdivision (a) of section 2972 requires that trial on such a petition be held no later than 30 days before expiration of the commitment, and the People had not shown good cause for a later trial.

During the hearing on the motion to dismiss, on May 22, 1997, the People conceded negligence in failing timely to file the petition to extend petitioner's commitment. However, the respondent court denied the motion, reasoning that the potential danger to society in releasing petitioner outweighed any prejudice suffered by petitioner. The respondent court accordingly set a date for trial of the recommitment petition.

On May 29, 1997, petitioner filed the instant writ petition. On May 30, 1997, we ordered the trial stayed pending further order of the court, and requested that the People file informal opposition. Upon receipt of the People's informal opposition, we notified the parties on June 19, 1997, we were considering issuing a peremptory writ of mandate in the first instance and requested further opposition. The time for further opposition has expired, and we have complied with the procedures required by *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171 [203 Cal.Rptr. 626, 681 P.2d 893]. Accordingly, we are authorized to issue a peremptory writ in the first instance.

II

Petitioner contends the People's failure to file the petition for extended commitment until nearly one month after expiration of his latest

commitment violated his right to due process by precluding him from preparing for hearing on the petition prior to the expiration of his commitment; and, further that the People have not met their burden of justifying the delayed filing, and the respondent court erred in determining the delay was justified by the danger posed by petitioner to the public. We agree.

Under the MDPA, a prison inmate who (1) has a severe mental disorder, not in remission or unable to be kept in remission without treatment, which was a cause of or factor in his criminal behavior, and (2) as a result of the mental disorder poses a substantial danger of physical harm to others, may be committed as an inpatient to a state mental hospital or ordered as a condition of parole to submit to mental health treatment as an outpatient. (§§ 2962, subds. (a), (b) & (d)(1), 2964, subd. (a).)[2]

Upon discharge of the prisoner's parole, a superior court may order the prisoner held "for continued involuntary treatment for one year" upon a district attorney's petition, supported by affidavits specifying the prisoner was continuously provided mental health treatment, and alleging "that the prisoner has a severe mental disorder, that the severe mental disorder is not in remission or cannot be kept in remission if the person's treatment is not continued, and that, by reason of his or her severe mental disorder, the prisoner represents a substantial danger of physical harm to others." (§ 2970.) At trial on the petition, before judge or jury, the People have the burden of proof beyond a reasonable doubt. (§ 2972, subds. (a)-(c).) The district attorney may petition for the person to be recommitted from year to year. (§ 2972, subd. (e).)[3]

Viewing the language of the MDPA as a whole, it is apparent the Legislature intended the district attorney to file the petition for extension of the commitment sufficiently in advance of the release date to guarantee the completion of trial on the petition before the discharge of parole or other scheduled release date. Not later than 180 days prior to termination of parole, the medical director of the state hospital shall submit to the district attorney a "written evaluation on remission." (§ 2970.) Although the MDPA does not specify the number of days prior to expiration of the commitment in which the petition must be filed, it does provide: "The trial shall commence no later than 30 calendar days prior to the time the person would otherwise

---

[2]The MDPA provisions apply solely to prisoners convicted of specified offenses, and only when "[t]he prisoner has been in treatment for the severe mental disorder for 90 days or more within the year prior to the prisoner's parole or release." (§ 2962, subds. (c) & (e).)

[3]"[T]he Legislature intended that a section 2970 hearing be held in the same county as that of the office of the district attorney that prosecuted the crime that triggered the [MDPA] proceeding." (*People* v. *Superior Court* (*Jump*) (1995) 40 Cal.App.4th 9, 13 [46 Cal.Rptr.2d 829].)

have been released, unless the time is waived by the person or unless good cause is shown." (§ 2972, subd. (a).) And, although the 30-day trial provision may be excused for good cause, the good cause provision does not excuse a filing of the petition for recommitment *after* the release date: *"Prior to the termination of a commitment under this section, a petition for recommitment may be filed . . . ."* (§ 2972, subd. (e), italics added.)⁴ Finally, upon discharge from parole, the MDPA authorizes recommitment in expressly limited and defined increments, i.e., "for a period of one year from the date of termination of parole or a previous commitment." (§ 2972, subd. (c).)⁵

■ Indeed, in requiring the completion of trial prior to the termination of the MDPA parole commitment or recommitment, the MDPA incorporates principles of due process. "We have recognized that for the ordinary citizen, commitment to a mental hospital produces 'a massive curtailment of liberty,' [citation], and in consequence 'requires due process protection.' [Citations.] The loss of liberty produced by an involuntary commitment is more than a loss of freedom from confinement. It is indisputable that commitment to a mental hospital 'can engender adverse social consequences to the individual' and that '[w]hether we label this phenomena [*sic*] a "stigma" or choose to call it something else . . . we recognize that it can occur and that it can have a very significant impact on the individual.' [Citations.] Also, '[a]mong the historic liberties' protected by the Due Process Clause is the 'right to be free from, and to obtain judicial relief for, unjustified intrusions on personal security.' [Citation.]" (*Vitek* v. *Jones* (1980) 445 U.S. 480, 491-492 [100 S.Ct. 1254, 1263, 63 L.Ed.2d 552].)

In *Vitek* v. *Jones*, the United States Supreme Court addressed issues of liberty and procedural due process implicated in the involuntary transfer of a

---

⁴Although the language of subdivision (e) of section 2972 is ambiguous as to whether it applies to the first petition for one-year extended commitment filed prior to discharge of parole in addition to subsequent annual recommitments, it would be unreasonable to construe the provision as not applying to the first one-year commitment. As we stated in *People* v. *Pacini* (1981) 120 Cal.App.3d 877, 889, footnote 7 [174 Cal.Rptr. 820], involving the virtually identical language of section 1026.5, former subdivision (b)(8), now subdivision (b)(10) (applicable to persons committed to state mental hospitals after being found not guilty by reason of insanity): "We can perceive no statutory policy which would treat the first extended commitment different than a second or subsequent extended commitment."

⁵See also *People* v. *Kirkland*, *supra*, 24 Cal.App.4th at page 913 ["we believe the purpose of the 30-day requirement [of § 2972, subd. (a)] is to ensure that the trial can be concluded before the defendant is due to be released." (Cf. *People* v. *Hill* (1982) 134 Cal.App.3d 1055, 1057 [185 Cal.Rptr. 64] ["The legislative objective in establishing these statutory limitations [of section 1026.5, the recommitment provision applicable to those found not guilty by reason of insanity] is clear, i.e., to allow a committee-patient and his counsel not less than 60 days to prepare for trial, and 30 days within which to complete such trial, without confining him beyond the maximum period permissible under his initial commitment."].)

prison inmate to a mental institution. The court held a Nebraska statute provided a prisoner with a liberty interest, protected by the due process clause of the Fourteenth Amendment, by conditioning the prisoner's transfer to a state mental hospital on a finding by a designated physician that the prisoner suffered from a mental disorder that could not properly be treated in prison. "This 'objective expectation, firmly fixed in state law and official Penal Complex practice,' that a prisoner would not be transferred unless he suffered from a mental disease or defect that could not be adequately treated in the prison, gave Jones a liberty interest that entitled him to the benefits of appropriate procedures in connection with determining the conditions that warranted his transfer to a mental hospital." (445 U.S. at pp. 489-490 [100 S.Ct. at p. 1262, 63 L.Ed.2d at pp. 562-563].) The court determined that to protect the identified liberty interest, the state was required to observe certain minimum procedures "before transferring a prisoner to a mental hospital." These procedures included written notice that transfer was being considered and a hearing. (445 U.S. at pp. 494-496 [100 S.Ct. at pp. 1264-1265, 63 L.Ed.2d at pp. 1264-1265].)[6]

In a more recent decision, the United States Supreme Court has strongly suggested that procedural due process requires a hearing *before* a state acts to commit a person involuntarily to a mental hospital for an extended period. In *Zinermon* v. *Burch* (1990) 494 U.S. 113 [110 S.Ct. 975, 108 L.Ed.2d 100], the court held the plaintiff, who alleged he had been committed to a mental hospital for five months without a precommitment hearing, stated a prima facie case under section 1983 (42 U.S.C. § 1983) for violation of his procedural due process rights. (*Zinermon* v. *Burch, supra,* 494 U.S. at pp. 114-115, 120, 139 [110 S.Ct. at pp. 977, 980, 990-991, 108 L.Ed.2d at pp. 108, 110, 122].) After examining the three-part test of *Mathews* v. *Eldridge* (1976) 424 U.S. 319, 335 [96 S.Ct. 893, 903, 47 L.Ed.2d 18], for determining "what procedural protections the Constitution requires in a particular case," the court expressly rejected the argument that the plaintiff received adequate process through the availability of a "postdeprivation damages remedy." (*Zinermon* v. *Burch, supra,* 494 U.S. at pp. 127, 138-139 [110 S.Ct. at pp. 984, 990, 108 L.Ed.2d at p. 122], see also *In re Roger S.* (1977) 19 Cal.3d 921, 937 [141 Cal.Rptr. 298, 569 P.2d 1286] [due process requires a precommitment hearing before the state commits a minor to a mental hospital upon the minor's parents' request].) ██ ██[7]

 Similar to the Nebraska statute considered in *Vitek* v. *Jones*, California law provides for one-year mental hospital recommitment of prisoners

---

[6]The decision in *Vitek* v. *Jones* is a plurality opinion, with Justice Powell providing the fifth vote in concurrence with that portion of the court's opinion discussed above. (445 U.S. at p. 497 [100 S.Ct. at p. 1266, 63 L.Ed.2d at p. 569].)

[7]"[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and

on parole and after discharge from parole only upon findings that the former prisoner suffers from a severe mental disorder which is neither in remission nor able to be kept in remission without treatment, and which poses a substantial danger to the public. The MDPA accommodates procedural due process by requiring the filing of the commitment petition prior to the expiration of the commitment, and requiring trial to commence 30 days prior to expiration in order to ensure that trial is completed prior to expiration of the commitment.

A line of cases construing the similar time limits of section 1026.5 (providing for annual recommitment of one found not guilty by reason of insanity) requires dismissal of recommitment petitions filed too close to the scheduled termination of commitment to permit preparation for trial. In the seminal case, *In re Johns* (1981) 119 Cal.App.3d 577 [175 Cal.Rptr. 443], the petitioner's commitment upon a finding of not guilty by reason of insanity was scheduled to expire on October 19, 1980. The petition to extend his commitment was filed 17 days late, and trial on the petition was not held until 5 days before the expiration of the commitment. (119 Cal.App.3d at pp. 579-580.) The Court of Appeal explained that ". . . considerations of due process require an inquiry into whether the defendant was harmed by violation of the statutory time requirements," and concluded "the inquiry should be the same as made when testing under due process standards the delay in criminal proceedings," i.e., a balance of the prejudicial effect of the delay against the justification for the delay. Ultimately the court concluded the petitioner showed no prejudice because trial was held 60 days after the petition was filed, and because the petitioner admitted the allegations of the petition. (*Id.* at p. 581.)

Later decisions of the Court of Appeal have followed *In re Johns*, dismissing petitions to extend "not guilty by reason of insanity" commitments filed too close to the scheduled release date to permit adequate trial preparation, where prejudice, but no justification for delay, has been shown. (*People* v. *Dougherty* (1983) 143 Cal.App.3d 245, 248-249 [191 Cal.Rptr. 668] [petition negligently filed 20 days before appellant's scheduled release date prejudiced appellant because inadequate time remained to obtain a medical expert]; *People* v. *Hawkins* (1983) 139 Cal.App.3d 984, 986-988 [189 Cal.Rptr. 126] [no good cause for tardy filing of petition, which resulted in the respondent not being brought to court for appointment of counsel until two days before the thirty-day time limit for the commencement of trial];

the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." (*Mathews* v. *Eldridge, supra,* 424 U.S. at p. 335 [96 S.Ct. at p. 903, 47 L.Ed.2d at p. 33].)

*People* v. *Hill, supra,* 134 Cal.App.3d at pp. 1057, 1060 [petition for extension of commitment not filed until one week before release date]; cf. *People* v. *McCune* (1995) 37 Cal.App.4th 686, 690-691 [43 Cal.Rptr.2d 804] [because the appellate record did not contain the defendant's motion to dismiss or the trial court's ruling on that motion, the record failed to show a lack of good cause for commencing the extension trial less than 30 days before the release date]; *People* v. *Echols* (1982) 138 Cal.App.3d 838, 842-843 [188 Cal.Rptr. 328] [adopting analysis of *In re Johns,* but affirming order extending commitment, despite untimely filing of petition, because adequate justification was provided for the untimely filing and because the committed person showed no prejudice].)[8]

In *People* v. *Kirkland, supra,* 24 Cal.App.4th 891, the Court of Appeal applied the due process analysis of *In re Johns, supra,* 119 Cal.App.3d 577, to untimely trials under the MDPA. In *Kirkland,* trial on a petition to extend commitment did not commence until six days before the scheduled discharge of the defendant's parole, but trial was concluded prior to the parole discharge date. (24 Cal.App.4th at pp. 898, 901.) The court held the People's failure to bring the commitment extension hearing to trial at least 30 days prior to parole discharge did not entitle the defendant to dismissal. The defendant made no specific showing that he suffered prejudice. Moreover, the delay was justified by the worsening of defendant's mental condition close to the date of his scheduled release, by misinformation given to the district attorney regarding the defendant's release date, and by a last-minute transfer of the defendant from one institution to another. (24 Cal.App.4th at pp. 910, 913-916.)

Without citation of supporting authority, the People argue that the due process test should be modified to permit the trial court to consider "the potential danger to the public in releasing a dangerous mentally disordered offender," given that an obvious purpose of the MDPA is to protect the public. The contention is without support in the law. "While . . . the effect of the delay was not to deprive appellant of his right to speedy trial, but rather to force him to trial in less than the minimum time provided by statute to prepare a defense, the due process analysis is the same. [Citations.]" (*People* v. *Dougherty, supra,* 143 Cal.App.3d at p. 249.) "The ultimate inquiry in determining a claim based upon due process is whether the

---

[8]In *People* v. *McCune, supra,* 37 Cal.App.4th 686, no issue was raised regarding the continuance of trial on the extension of commitment petition beyond the defendant's scheduled release date. See also *People* v. *Curtis* (1986) 177 Cal.App.3d 982, 987, 990 [223 Cal.Rptr. 397], where this court affirmed a judgment of recommitment of a mentally disordered sex offender where trial started less than 30 days before the commitment was to expire but was completed prior to expiration, and the defendant showed no prejudice from the delay in starting trial.

defendant will be denied a fair trial." (*Scherling* v. *Superior Court* (1978) 22 Cal.3d 493, 507 [149 Cal.Rptr. 597, 585 P.2d 219].) "[R]egardless of whether defendant's claim is based on a due process analysis or a right to a speedy trial not defined by statute, the test is the same, i.e., any prejudice to the defendant resulting from the delay must be weighed against justification for the delay." (22 Cal.3d at p. 505, fn. omitted.)

Nor is the People's contention supported in logic. Nothing in the MDPA suggests that, despite the committed person's receipt of mental health treatment for a year, a presumption of continued dangerousness is effected by the district attorney's mere filing of a petition for commitment under the MDPA. To the contrary, the MDPA requires the People to prove beyond a reasonable doubt that the committed person continues to pose a substantial danger of physical harm to others. (§ 2972, subd. (a).) Were the trial court to balance the alleged danger to the public against the prejudice to the committed person when a petition for extended commitment is belatedly filed, the requirement of conducting the trial prior to expiration of the commitment would be effectively vitiated.

Petitioner has established a right to relief. Because the petition to extend petitioner's commitment was not filed until after his one-year recommitment term expired, petitioner obviously was unable to prepare for a preexpiration trial. Petitioner consequently has suffered prejudice, i.e., 24 days of unauthorized confinement in a state mental hospital prior to the filing of the petition for recommitment, followed by continued unauthorized confinement to date. Moreover, the People proffered no justification for the delay, conceding the delay was caused entirely by the district attorney's negligence. Under these circumstances, the respondent superior court erred in denying petitioner's motion to dismiss.[9]

In our request for opposition, we asked the People to address the question whether the respondent superior court had jurisdiction to consider the commitment extension petition given that the petition was not filed until *after* petitioner's recommitment had expired. (See *People* v. *Saville* (1982) 138 Cal.App.3d 970, 974 [188 Cal.Rptr. 376]; *People* v. *Pacini*, *supra*, 120 Cal.App.3d 877, 889-892; cf. *People* v. *Mord* (1988) 197 Cal.App.3d 1090, 1108 [243 Cal.Rptr. 403]; *People* v. *Minahen* (1986) 179 Cal.App.3d 180,

---

[9]We agree with the court in *People* v. *Hill*, *supra*, 134 Cal.App.3d at page 1060: "[S]ince we certainly derive no satisfaction from [directing the dismissal of an MDPA petition which may well have been granted] if timely made, we note that if [petitioner] even now continues to represent a significant danger to himself or others, proceedings may yet be instituted, as they should have been at the time of the hearing here under review, in accordance with the terms of the Lanterman-Petris-Short Act [Welf. & Inst. Code, § 5000 et seq., especially §§ 5300-5309]."

185-189 [224 Cal.Rptr. 460].) Given our conclusion as to the due process claim relied upon by petitioner, we need not decide the jurisdictional issue.

Let a peremptory writ of mandate issue directing the respondent superior court to vacate its order of May 22, 1997, denying petitioner's motion to dismiss the People's petition for extension of commitment, and to enter a new order granting petitioner's motion to dismiss. Upon finality of this decision, the stay previously issued is vacated.

Morrison, J., and Callahan, J., concurred.